CROMBIE ADMR. &c. v. ENGLE LATE ADMR.

---

*Certiorari* to Orphans' Court of Bergen county.

1. After a decree for sale has been executed, the Orphans' Court have no power set aside the decree.

2. An application to the Orphans' Court to open an account, upon the

ground of fraud or mistake, is not an application to the general and un-limited discretion of the court: and if supported by legal and sufficient evidence, is ex debito justitiæ.

3. The provision of the statute, that the account when settled and allowed by the Orphans' Court, shall be final and conclusive, "except when fraud or mistake can be shown to the satisfaction of the court," does not refer the matter to the mere discretion of the court: but is equivalent to a positive enactment, that the account shall not be conclusive, if fraud or mistake can be shown, by legal and sufficient evidence.

4. If the court discharges the rule to show cause why the account should not be opened and re-stated on the ground of fraud or mistake, and order the applicant to pay the costs, notwithstanding the fraud or mistake is appa-rent on the face of the account or is proved by legal evidence, it is error, and a *Certiorari* will lie.

5. The court will not intend, that the Orphans' Court refused to be satisfied with legal and sufficient evidence, but that they erred in considering the evidence not legal: or in deciding the matter not to be fraudulent or a mistake, which was so.

6. The words, "to the satisfaction of the court," used in the statute, mean the judicial satisfaction; and amount to no more than that it shall be *legally proved*, that there is fraud or mistake.

7. A former administrator or his representatives may be called upon by a new administrator, by a notice, or upon a rule: to show cause why his account should not be opened for fraud or mistake.

Argued at May Term, 1842, by

*W. Halsted* for plaintiff in *Certiorari.*

*I. H. Williamson* for defendant.

The opinion of the Court, delivered by

HORNBLOWER, C. J.    The return to this writ presents to us, the case of an administrator, who had fifty-four dollars and six-ty-four cents of assets in his hands; who has never paid, nor been called upon to pay, one dollar of debt due from his intestate: and yet, obtained an order of the Orphans' Court to sell his in-testate's lands, for the *payment of debts:* and who, after having sold lands to the amount of eleven hundred and twenty-two dol-lars and fifty-three cents, had only five hundred and forty-five dollars and ninety cents left in his hands, to be distributed among the next of kin.    And a case too, in which the Orphans' Court allowed an administrator's account, although out of forty-

four vouchers presented by him, not one of them was for a debt due by the intestate, and only two or three of them, (which were for court's and surrogate's fees,) proper charges against the estate.

The facts are as follows: John G. Leake, the intestate, died in the city of New York on the 2d of June, 1827, leaving real and personal property in the county of Bergen, in this state. On the 18th of the same month, Engle obtained the administration of his estate.

On the 21st of February, 1829, the legislature passed an act, making Engle trustee of Leake's real estate, with power to sue, *in the name of the state*, for any trespasses committed upon it : and expressly charging the land with the expenses of executing the trust : the payment of taxes, and other reasonable expenses.

On the 15th June, 1835, the administrator exhibited his account for settlement : it was audited by the surrogate, and allowed and passed by the court, resulting in the manner I have already stated.

In that account the administrator does not charge himself by inventory ; but, " with amount of money realized from the sales of certain personal estate of the deceased, fifty-four dollars and sixty-four cents." He then claims and receives allowance for various payments as per vouchers, amounting with interest upon them, to something more than five hundred dollars. As I have said before, not one of those payments was for a debt due from the intestate ; and only two or three of them, which were for court's and surrogate's fees, that were proper charges against the personal estate. They were for sundry counsel fees, and bills of cost paid by him in suits he had unsuccessfully brought in his own name, for trespasses on the land, for taxes on the real estate, for surveying and mapping the land, for chain bearers, for messengers, for witnesses, for entertainment at taverns, at Trenton and other places for himself and others, for travelling expenses, and several of them for " services rendered the Lake estate," and other charges equally objectionable.

In January term, 1835, the administrator had obtained an order of the Orphans' Court, upon an alleged and sworn deficiency of personal assets, to pay the debts, " and expenses ;" (when in fact there was not a debt to be paid,) and afterwards, in June

Crombie Admr. v. Engle late Admr.

term, settled his account as above stated, in which he got an allowance of one hundred and seventeen dollars for commissions.

Thus matters stood until March term, 1838, when the letters of administration to Engle were revoked by the Orphans' Court, and new letters granted to the plaintiff in *Certiorari.* At the same term, a rule was granted calling on Engle to show cause, why the order for the sale of real estate, should not be set aside, on the ground of *fraud* and mistake in the obtaining and making the same: and also another rule on him to show cause why the decree allowing his account, should not be set aside, and the account be opened and re-settled on the ground of fraud and mistake therein. At a subsequent term of the court, the argument of these rules came on, and after reading the depositions and vouchers, which are now before this court, and hearing the arguments of counsel, the Orphans' Court by separate judgments or decrees, discharged the rules to show cause, and ordered, that Crombie, (the plaintiff in *Certiorari,*) should pay the costs to be taxed. Thereupon this *Certiorari* was sued out: and in obedience to its commands, the Orphans' Court have certified to us, the account and the vouchers on which it was stated, together with the depositions, and their final order or decrees made by them, on the said rules to show cause.

I. It is objected, that the *Certiorari* is multifarious; that it brings up two distinct orders or decrees of the Orphans' Court; one relating to the sale of lands, and the other to a re-statement of the final account.

If these matters are proper to be reviewed here, I see no objection to bringing them before us upon one writ. They are but different parts of one proceeding, and may receive similar or different decisions.

As to the decree for a sale, in my opinion, the present administrator had no right to seek its reversal: it was a matter in which, as administrator he had no interest. If the court made that decree unduly or without legal authority, it affects only the heir at law, and he alone has a right to complain.

II. It is objected, that the Orphans' Court had no power to *set aside* the decree for sale, or the final account; but only to open and re-state the latter, upon fraud or mistake being proved to the satisfaction of the court.

As to the decree for sale, after it had been executed, I am of opinion, the Orphans' Court had no power to vacate or set it aside; and if they had done so, it could not have affected the rights of bona fide purchasers under the decree. But as to the final account, the court had power, if not to vacate and set it all aside, at least to open and re-state it, so as to correct it in all such particulars, in which it should be proved, by legal evidence, to be fraudulent or erroneous.

III. That Engle's letters of administration have not been revoked; and if they have been, there is no evidence of it here.

By the thirty-fourth section of the act, *Elm. Dig.* 368, the Orphans' Court have power, in certain cases, to revoke letters of administration and to issue new ones. They have granted letters to Crombie; he comes into court with them, and the Orphans' Court have dealt with him as administrator, and with Engle, as late administrator. It so appears by their return to this writ; and I think we cannot, in this indirect way, decide whether the Orphans' Court have done right or wrong, in revoking the letters granted to Engle, and issuing new ones to Crombie.

IV. If Engle has ceased to be administrator, the Orphans' Court have no longer any control over him; he cannot be cited or dealt with as administrator.

This objection is based upon a false assumption. Calling upon him to show cause why the account which he exhibited as a just and true one, should not be set aside for fraud and mistake, is not *citing* him to account; nor dealing with him *as administrator*. He is called upon, as John Engle, not by citation, but by a rule of court in the nature of a notice, to show cause, if he thinks proper to do so, why the account which he rendered as a final one, and which the Orphans' Court had allowed, should not be opened and corrected.

The object of this proceeding on the part of Crombie, was to get rid of the final decree of the Orphans' Court, allowing and confirming that false and fraudulent account; which, so long as it remained, stood in his way, and concluded his rights as against Engle. It is not pretended, that Engle was bound to attend, or that the Orphans' Court could have proceeded against him for a contempt, if he did not choose to attend and show cause.

It is true, as stated by counsel, if an executor or administra-

tor die, his executor or administrator cannot be *cited* to account for assets that came to the hands of the first executor or administrator. In such case the only remedy is in a court of Equity.

But this is a very different thing. Suppose an executor or administrator should exhibit his final account and get it decreed and allowed in the Orphans' Court and then die; and it should afterwards be discovered to be grossly fraudulent or erroneous? Is there no remedy? Has the fraudulent executor or administrator, by his death, sealed up the fraud, so that it can never be reached? The statute says, *Sec.* 32 *Elm. Dig.* 365, that "the sentence or decree of the Orphans' Court," allowing the account, "shall be conclusive upon all parties, and shall exonerate and forever discharge the executor &c. from all demands beyond the amount &c." except as to future "assets, and when fraud or mistake can be shown to the satisfaction of the Orphans' Court." But if the executor is dead, and if his executor or administrator cannot be called upon to show cause why the account should not be opened for fraud or mistake, why then, the death of the executor has rivetted the fraud or mistake, however great or palpable, on the parties interested.

Again, by the first section of the supplement, *Elm. Dig.* 368, if an administrator refuses to give security for the balance found to be in his hands, the Orphans' Court may revoke his letters and issue new ones to another person. Now suppose such newly appointed administrator, after it is too late to bring a *Certiorari*, discovers fraud and mistake in the settlement of his predecessor's final account, is there no way of correcting it? I know of none, except by application to the Orphans' Court to set aside their decree, and open the account; and this can only be done upon notice to the former administrator; or in case of his death, to his representatives, to show cause why it should not be done. But this is not dealing with him as administrator; it is not citing him to account: it is simply giving him an opportunity to be present and be heard, upon an application to correct the account for alleged fraud or mistake.

V. The last objection is, that no *Certiorari* will lie in this case, because the application to the Orphans' Court, was an application to their *discretion,* and this court cannot review their discretion: that fraud or mistake must be proved "to the satisfac-

tion of the Orphans' Court;" and that this court cannot review or control the conscience of the Orphans' Court, and proceed against them for a contempt if they will not be satisfied.

This is putting the argument in a very plausible shape; but in my opinion, it is unsound. The error lies in supposing the application to be to the *discretion* of the Orphans' Court; and that whether they will grant or refuse it, must depend upon the question, whether they are *satisfied* or not. On the contrary, I think the application, is *ex debito justitiæ*, and if sustained by sufficient and legal proof, the Orphans' Court are *bound* to be satisfied with it.

When the statute says, the account shall be conclusive, " except where fraud or mistake can be shown," I understand it as a positive enactment, *that it shall not be conclusive*, where fraud or mistake can be *shown* by due and legal proof: and not, that it shall then be in the mere discretion of the court to say, whether such fraud or mistake shall be rectified or not.

If upon reviewing the evidence of fraud or mistake, we find that the evidence was legal, and clearly sufficient to establish the one or the other; we must intend, not that the court below refused to be satisfied with legal and sufficient evidence; but, that they erred in supposing the evidence to be illegal and insufficient or that what was insisted on as fraudulent, or an error in the account, was not so in law.

Suppose for instance the mistake sought to be rectified, consisted in a palpable mis-addition or subtraction of figures, and the Orphans' Court should refuse to correct it; is the party to be without remedy? It may be said, this is putting an extreme case and one that is not likely to occur : but it would not, in my opinion, be a more extreme case than the one that has happened. It is quite as likely, one would think, that a court should be unable to make a right addition of figures, as that they should, not only allow items, which upon the very face of them, have no connection with the matter of administration ; but should confirm an account showing a balance of more than five hundred dollars due to an administrator who had fifty-four dollars to begin with, and not a debt to pay.

But this very question has been fully and in my opinion, rightly settled by this court, in the case of *Johnson, surviving Exr.*

&c. v. *Eicke et al.*, 7 *Halst.* 316.   In that case, as in this, it was insisted, that error would not lie, because it was the exercise of a mere discretionary power in the Orphan's Court.   But the court say, the statute "does not confer a *general discretion* on the subject, but limits it to cases where the party applying, *shall prove* some fraud or mistake therein."   The court then go on to remark, that the words, "to the satisfaction of the Orphans' Court," ought not to be construed, as vesting "an unlimited discretion" in the court, to act as they please.   To that remark I will only add, that the words, "to the satisfaction of the court," are in fact superfluous and unmeaning; or rather that they mean nothing more than would have been implied and understood, if they had been omitted.

When a statute says, a court shall do a certain thing, "upon proof being made," it means sufficient proof; such *as satisfies the court*, of the existence of the fact alleged.

Suppose then the statute had said, "the court shall open the account, whenever the party applying, *shall prove* fraud or mistake therein," would it be pretended that the Orphans' Court were to be the sole and exclusive judges of what amounted to such proof; and that their decision could not be reviewed in this court?   I think not.

The only difference between that case, 7 *Halst.* 316, and the one now before us is, that in the former, the Orphans' Court *were satisfied*, when they ought not to have been; and in this case, they *were not satisfied*, when they ought to have been : and surely it will not be pretended, that when the Orphans' Court open and alter an account, upon what we think, insufficient *proof*, we may review their order ; but when that court not only refuses to open an account, upon the most clear and abundant *proof*, of fraud and mistake ; but dismisses the application and decrees the costs of it, to be paid by the applicant, we have no power to review their proceedings and correct the error.

For my part, I am fully convinced of our jurisdiction in this case, and no less of our duty to reverse the order and decree of the Orphans' Court, dismissing the rule to show cause why the account should not be opened, and ordering the applicant to pay the costs : and I am further of opinion, that the record be remitted with instructions, that the account ought to be corrected, by

striking out all the items not relating to the administration and settlement of the personal estate.

NEVIUS, J. and ELMER, J. concurred.

WHITE, J. was absent when the cause was argued, and gave no opinion.

Dissenting opinion of

WHITEHEAD, J.   John G. Leake died intestate in June, 1827, and letters of administration upon his personal estate were duly granted to John Engle, the defendant in *Certiorari*.

Upon an allegation, that the personal estate of the intestate was insufficient for the payment of his debts, an order for the sale of a part of his real estate, was obtained in due form ; the land sold ; the proceedings of the administrator reported in writing to the Orphans' Court next after such sale, and a deed to the purchaser executed pursuant to the order of the court for that purpose.   The account of the administrator was reported to the Orphans' Court at the June term, 1835, for final settlement, and the same was decreed accordingly.

Some time after this, but when and for what reason does not appear by the case, his letters of administration were revoked, and letters were granted to Crombie the plaintiff in *Certiorari*. At the March term of the court, 1838, Crombie applied for and obtained rules upon Engle, the former administrator, to show cause why the final decree on the settlement of his account, should not be set aside, and the account opened and re-settled, on the ground of fraud and mistake ; and why the order for the sale of the land and the approval of the sale thereof, should not be set aside for the same reason.

The application was founded upon the thirty-second section of the act to ascertain the power and authority of the ordinary and his surrogates, *Elm. Dig.* 365, by which it is enacted, " that the sentence or decree of the Orphans' Court, on the final settlement, and allowance of the accounts of executors, administrators, guardians or trustees, shall be conclusive upon all parties and shall exonerate and forever discharge every such executor, administrator, guardian or trustee, from all demands of creditors, legatees or others, beyond the amount of such settlement, except

for assets or moneys which may come to hand after settlement as aforesaid, excepting also in cases where a party applying for a re-settlement, shall prove some fraud or mistake therein, to the satisfaction of the said Orphans' Court."

Upon hearing the application, that these rules be made absolute, sundry depositions of witnesses were read, (taken under a rule of court for that purpose,) as to the receipt and disbursement of moneys by the former administrator, showing to my mind, if the witnesses were worthy of credit, a case of gross fraud on his part. But the Orphans' Court being of opinion, that the plaintiff had not proved fraud or mistake in the account, or in the language of the statute, fraud or mistake not being proved *to the satisfaction of the Orphans' Court*, discharged the rules.

The *Certiorari* brings up these several rules of the Orphans' Court, with the testimony of the witnesses, to be reviewed, and the errors of the court below corrected.

I can find no authority given by statute to the Orphans' Court to interfere with or set aside an order for the sale of land by an executor or administrator, on the ground of fraud or mistake. And in the absence of any such authority over these orders, it has clearly no jurisdiction. There would be a manifest impropriety in the exercise of a jurisdiction of this kind, without protecting the rights of innocent purchasers. It is sufficient however for our present purpose, that the Orphans' Court had no authority by statute for this proceeding, and was therefore clearly right in refusing to disturb this order; and more especially as third persons had acquired rights under it.

Upon the application to open and re-settle the final account, on the ground of fraud and mistake, the proceedings are regular in point of form, and within the jurisdiction of the Orphans' Court. Is the alleged error in refusing to open this account under the circumstances of this case, examinable by this court upon *Certiorari?* I think not. This was a matter resting entirely in the discretion of the Orphans' Court, and as such, not subject to review by this court. True, the discretion of that court in this matter is a limited discretion. By the terms of the act, it has authority to open these decrees only upon proof of fraud or mistake, to its satisfaction. To produce this satisfaction there

must be proof, and it must be of a legal character.   If therefore, in the exercise of this discretion, that court should order a decree to be opened for re-settlement, upon illegal evidence, or without any proof whatever of fraud or mistake, as was the case in *Johnson* v. *Eicke*, 7 *Halst.* 316, it would be such an error or illegality as could be corrected by this court on *Certiorari.*   In this case, no question is raised as to illegality in the proceedings of the Orphans' Court.   No complaint is made of the rejection of legal or the admission of illegal evidence.   The supposed error is, the judgment it formed upon the evidence : or in other words, it committed an error in not being *satisfied* upon the proof in the case, that there was fraud or mistake in the accounts of the defendant Engle.   It does not appear, that any question of law was involved or discussed on the hearing before the court below.   It was purely a question of fact, addressed to the sound discretion of the court, upon a matter exclusively within its jurisdiction, and as such, not examinable by this court. We have no power to interrogate the judges as to the operations of their minds in this matter, or to inquire into the reasons and principles of their determinations.

Our business, sitting as a court of Error, is with legal errors or illegalities in the proceedings of inferior judicatories, and not with supposed errors upon questions of fact, except in those cases where authority is given by statute to review the merits upon *Certiorari.*   If we entertain jurisdiction in this case, then I see not, why by means of a *Certiorari* "*granted on matter of law only,*" we cannot look into the merits of every case brought before us in this way, and correct what in our opinion, may be a wrong judgment by the inferior tribunal, upon the evidence.

Again, no complaint having been made of the violation of any principle of law, by the judges of the Orphans' Court, it appears to me we are bound to presume, that the rules to show cause were discharged, because of the insufficiency of the proof in their opinion, of fraud or mistake in Engle's account.   Suppose we exercise jurisdiction and reverse the proceedings, because in our opinion, there are mistakes in these accounts, will the Orphans' Court be bound upon a re-hearing upon the same proof, to be satisfied also, and decree accordingly ?   I think not. That court may, upon a re-hearing again adjudge the proof in

sufficient in their opinion, and refuse to set aside the decree. We have no power to compel them to order otherwise, nor can we punish them for contempt for not being satisfied ; or in other words, for not forming the same opinion we do upon the evidence, and for the reason, that it is a matter of discretion with them, made so by statute. The judges of the Orphans' Court, not of this court, are to be satisfied.

The seeming hardship of the case, should have no influence with us in determining this question, as upon matters of this kind, the court of Chancery has jurisdiction, and all proper relief can there be afforded the party.

In my opinion, the *Certiorari* should be dismissed.

*Decree of Orphans' Court dismissing the rule to show cause against opening the account, &c. reversed ; and record remitted with instructions.*

CITED *in Stevenson* v. *Phillips,* 1 *Zab.* 72; *Same case,* 1 *Zab.* 561–618.